UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

JOHN THOMAS WISELL,

                              Debtor.
-----------------------------------------------------------------x
INDO-MED COMMODITIES, INC

                           Plaintiff,

      - against -

JOHN THOMAS WISELL,

                         Defendant.
-----------------------------------------------------------------x

Case No. 810-78537-reg

Chapter 7

Adv. Proc. No. 811-08163-reg

## <u>MEMORANDUM DECISION</u>

Before the Court is a motion for summary judgment ("Motion") by the Plaintiff, Indo-Mediterranean Commodities, Ltd. ("IMUK" or the "Plaintiff"), seeking the entry of judgment that the debt owed to it by the Debtor-defendant, John Thomas Wisell (the "Debtor") is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6). The Plaintiff argues that by giving as it must full force and effect to the findings of the Supreme Court of the State of New York ("the State Court") in support of a pre-petition judgment ("Judgment") in the amount of $2,927,697.01, and applying the doctrines of *res judicata* and collateral estoppel, this Court has sufficient basis to grant the Motion. The Motion is unopposed.

This case requires a determination of how a bankruptcy court applies the doctrine of collateral estoppel and/or *res judicata* in an action seeking to deny a debtor a discharge pursuant to Section 523(a) of the Bankruptcy Code. The Court does not question that it is bound by the doctrine of *res judicata*, or claim preclusion, from looking beyond the Judgment which

establishes that there is a debt owed by the Debtor to the Plaintiff in the amount of

$2,927,697.01.  However, while *res judicata* is applicable in establishing the existence of the

debt the Court should not look to *res judicata* as the basis to determine a cause of action which

arises exclusively under the Bankruptcy Code such as an action pursuant to Section 523(a).

In order for a plaintiff to utilize the findings of a non-bankruptcy court in support of a

Section 523(a) cause of action, the bankruptcy court must determine the applicability of

collateral estoppel.  Whether it is at the conclusion of trial or on a summary judgment

determination, in order to enter a Section 523(a) judgment against a debtor the Court must find

that all of the necessary elements of Section 523(a) have been proven by a preponderance of the

evidence.  *Grogan v. Garner*, 498 U.S. 279 (1991).  When relying on collateral estoppel and a

pre-bankruptcy judgment against the debtor as a basis for Section 523 relief, the bankruptcy

court must be able to point to clear and unequivocal factual and/or legal findings in the pre-

petition judgment which would satisfy the requisite elements of Section 523(a).  As this Court

has previously stated in this context, it "will not string together sentences . . . so as to cobble

together a finding" under Section 523(a).  *Sarasota CCM, Inc. v. Kuncman (In re Kuncman)*, No.

8-10-08306-reg, 2011 WL 1376780, at *6 (Bankr. E.D.N.Y. Apr. 12, 2011).

In this case the Debtor has offered no objection to the relief sought in the Motion.

Pursuant to Federal Rule of Civil Procedure 56(e), the Debtor's failure to oppose the Motion

allows the Court to consider the findings of the State Court in support of the Judgment to be

undisputed.  Therefore collateral estoppel is applicable and the Court will recognize the findings

of the State Court.  However, the doctrine of collateral estoppel cannot be employed by the

Plaintiff in a manner so as to limit the obligation of this Court to undertake an independent

analysis of whether those findings are sufficient to support the granting of the requested relief

under Section 523(a) in the context of a summary judgment motion.

After giving collateral estoppel effect to the findings of the State Court in support of the

pre-petition Judgment and having applied those findings to the causes of action alleged under

Section 523(a), the Court finds that judgment should enter in favor of the Plaintiff, but only in

part.  The findings by the State Court were insufficient to establish that the Debtor acted with the

fraudulent intent required to satisfy certain parts of Section 523(a).  However, the Court will

enter judgment of non-dischargeability in favor of the Plaintiff for false pretenses under Section

523(a)(2)(A), defalcation while acting in a fiduciary capacity under Sections 523(a)(4), and

willful and malicious conduct under Section 523(a)(6).

### *Facts*

In February 2000, the Debtor, John T. Wisell, Sr., filed a complaint in the State Court

against Indo-Mediterranean Commodities, Ltd. ("IMUK" or "Plaintiff"), Philmanex Inc. and

Shabbir Abidali ("Abidali"), individually and in his capacity as sole director of IMUK.  In the

complaint, the Debtor alleged that from 1986 through 1995, he was a New York based sales

representative for the Plaintiff, IMUK, and was paid commissions in connection with his sales.

In 1995, IMUK proposed to the Debtor a profit sharing arrangement.  According to the Debtor,

he did not accept that arrangement.  In the complaint, the Debtor sought damages in an amount

totaling $605,000 for the defendants' failure to pay the Debtor for his services from 1995

through 1998, failure to repay advances the Debtor made on the IMUK's behalf, and diversion of

profits from IMUK to Philmanex.  IMUK and the other defendants in that action filed

counterclaims  alleging that the Debtor was a fiduciary of IMUK's wholly owned subsidiary, Indo-Med USA ("IMUSA"), and that the Debtor breached that fiduciary duty.  The counterclaims also asserted claims against the Debtor for tortious interference with contract, diversion of corporate opportunity, breach of contract, misappropriation of IMUK trademarks and logo, violation of the Lanham Act (15 U.S.C. §§1051 et. seq.) and New York General Business law §§ 133 and 360-l.

After a lengthy trial of the matter, on May 2, 2006, the State Court issued a 50-page decision setting forth detailed findings of fact and conclusions of law.  Consistent with the decision a judgment was entered against the Debtor in favor of IMUK, the Plaintiff herein, in the amount of $2,927,697.01.  The findings of fact and conclusions of law of the State Court decision ("Decision") and a subsequent decision on a motion for reconsideration ("Second Decision"), are summarized below.

IMUK is a corporation formed under the laws of the United Kingdom.  IMUSA is a wholly-owned subsidiary of IMUK, and was doing business in the United States as a food broker during the time period in question.  Prior to 1995, the Debtor was working as an independent broker for IMUSA.  In August 1995, IMUSA entered into an oral joint venture agreement with the Debtor and the Debtor's corporation, Scala Wisell Co., Inc. ("Scala Wisell") pursuant to which agreement the Debtor would be the president of IMUSA.  He would receive no salary from IMUSA but would receive a one-third share of all profits and bear a one-third responsibility for all losses.  IMUK would share the other two-thirds of profits and losses.  The Debtor was responsible for developing the business of IMUSA and selling its products but he was to have no direct contact with suppliers and no involvement with shipping.

According to the State Court's recitation of the facts, it appears that the joint venture agreement was honored more in the breach than in the observance. There were constant disagreements about the extent of the Debtor's authority to make deals and use IMUSA moneys. Despite the terms of the joint venture agreement, the Debtor directly contacted suppliers and made unauthorized purchases from suppliers that IMUK believed were over market value. The Debtor told IMUK that he needed access to money to make sales and was given a bank account with a $5,000 cap, which he often exceeded. Nonetheless, the joint venture agreement and its accompanying fiduciary duties were valid and in force beginning in late 1995 or early 1996.

Unbeknownst to IMUK or IMUSA, in July 1998, the Debtor incorporated an entity called called Indo-Med North America ("IMNA"). The Debtor transferred the inventory of IMUSA to IMNA as of January 1999 and did business as IMNA without the knowledge or consent of IMUK. The Debtor concealed the creation of IMNA from IMUK and continued to use IMUSA stationery when conducting IMNA business. The Debtor diverted money from IMUSA to Scala Wisell for "undocumented expenses, modifications and renovations at the Scala Wisell facility." The Debtor promoted IMNA at food conventions and meetings with suppliers at the expense of IMUSA. The Debtor also changed the name on the corporate credit card from IMUSA to IMNA. He used new IMNA letterhead with the IMUSA/IMUK logo, slogan and contact information, and attempted to trademark the Indo-Med logo in January 2000 "falsely stating that it first had been used in 1999." Furthermore, the Debtor authorized the use of IMUK and/or IMUSA funds for salaries paid to his family and for personal expenses (such as baby clothing, toys, and family travel) while failing to keep proper financial records. Despite the Debtor's actions, at a meeting with IMUK's principal, Abidali, in January 1999, the Debtor failed to

disclose to IMUK that he had formed a new, competing, company.

The Debtor concealed IMNA from IMUK, until July 1999. When the Debtor ran out of IMUSA letterhead, he began sending all correspondence with IMUK on Scala Wisell letterhead. It was not until July 1999, when one of IMUSA's employees submitted his "resignation from Indomed North America" that officers of IMUK were made aware of the Debtor's actions. It appears that the relationship among the parties ceased at that point, but that point is clear from the decision. The Debtor filed suit against the Plaintiff in February 2000.

The State Court made a number of findings regarding the Debtor's liability to IMUK. First, the State Court found that the Debtor owed a fiduciary duty to IMUSA as the company's president, and owed a duty of fidelity and good faith to IMUK and IMUSA as a joint venture partner. Ultimately, based on extensive findings, the State Court found that the Debtor "[i]n taking and utilizing the assets of IMUSA including its inventory, customer contacts and relationships and converting them to his sole advantage and to the detriment and derogation of the corporation of which he was president warrants a finding of a breach of [the Debtor's] fiduciary duty to IMUSA." (Decision at 16). Specifically, the State Court found that the Debtor breached his fiduciary duty to IMUSA and IMUK by incorporating IMNA in July 1998 without IMUK's knowledge; transferring the inventory and assets of IMUSA to IMNA as of January 1999; using IMUSA money for his own personal expenses; paying unauthorized salaries and benefits to his wife and relatives; diverting IMUSA assets such as inventory, customer contacts and relationships to IMNA to the detriment of IMUSA and to his sole advantage at IMNA; and misusing corporate bank accounts. In sum, the Debtor's "breach of fiduciary duty consisted of appropriating a joint venture opportunity by diverting business to his own company – IMNA –

which he formed for that very purpose and named it so as to cause confusion among IMUSA's customers and suppliers." (Second Decision at 7).

Second, the State Court found that there was a valid contract between IMUSA and the Debtor, and the Debtor breached that contract by undertaking and performing, through IMNA, IMUSA contracts.  (Decision at 19).

Third, the State Court found that the Debtor violated the Lanham Act which prohibits the use of "any reproduction, counterfeit, copy or colorable imitation of a registered mark" where "such use is likely to cause confusion or to cause mistake or to deceive." (Decision at 19; 15 U.S.C. § 1114(1)(a)).  In connection with its finding that the Debtor breached the Lanham Act, the State Court found: "IMNA carried on the business that had previously been done by IMUSA. IMNA began purchasing products from IMUSA's suppliers and began selling to IMUSA's customers. . . . and [the Debtor] clearly acted in bad faith when adopting the IMUSA mark from IMNA . . . [and the Debtor] was intentionally misleading both the suppliers and customers by continuing to used [sic] the Indo-Med name and mark." (Decision at 22-23).   The Debtor and "IMNA actively engaged in deception. . . .  [and] did almost everything possible to lead suppliers and customer to believe that the only difference between IMUSA and IMNA was the name of the business."  (Decision at 23).  Although the State Court granted monetary damages under the Lanham Act, it declined to award punitive damages in connection with the Lanham Act due to IMUSA/IMUK's failure to enforce their rights against the Debtor until the Debtor commenced an action against them in February 2000 even though they were aware of the Debtor's actions in July 1999.

Fourth, the State Court found that the Debtor violated New York General Business law

§§133 and 360-l which, respectively, prohibits a person or corporation from using a name or symbol "with intent to deceive and mislead the public," and provides injunctive relief for trademark infringement which is likely to cause injury to business reputation or dilute the distinctive quality of a mark or trade name.  In connection with these claims, the State Court found that the Debtor "clearly intended to have both the customers and the suppliers believe that IMUSA had simply changed its name to IMNA and that they were still dealing with the same people . . . [and] clearly intended suppliers and customers to associate his new IMNA business with IMUSA."  (Decision at 25-27).

Finally, the State Court also imposed punitive damages against the Debtor.  Under New York State law, the imposition of punitive damages required a showing that the Debtor had "engaged in intentional and deliberate wrongdoing . . . where the defendant had a fraudulent or evil motive or evidenced willful or wanton disregard for the rights of others." (Decision at 27-28) (case citations omitted).  Initially, the State Court did not articulate the precise grounds for the imposition of punitive damages but found "no question . . . but that an award of punitive damages against [the Debtor] is appropriate."  (Decision at 28).  In the Second Decision, however, the State Court stated that punitive damages were based on "the Debtor's deliberate wrongdoing, his fraudulent motive and other outrageous circumstances."  (Second Decision at 3-4).

The State Court considered, and rejected, the Debtor's affirmative defenses of unclean hands and laches.  The court also rejected the Debtor's argument that the business judgment rule protected his actions as president of IMUSA.  The court found that the business judgment rule does not "insulate an officer or director from his/her fraud, self-dealing, breach of fiduciary duty

or decisions affected by an inherent conflict of interest." (Decision at 33) (case citations omitted). The court found that the Debtor's "conflict of interest, wrongdoing and self-dealing, as found by this Court, negates the application of the business judgment rule." (Decision at 33).

On March 16, 2009, the State Court entered a judgment against the Debtor for $2,927,697.01. The total Judgment consists of $1,455,673.20 in compensatory damages; $568,190.53 in interest on the principal from December 31, 2001 through May 2, 2006; $150,000 in punitive damages; $115,787.76 for forensic accounting costs; plus $637,095 interest from May 2, 2006 through March 19, 2009 and $950 costs and disbursements taxed by the clerk of court. The State Court arrived at the compensatory damages figure with the assistance of a forensic accountant: The court awarded IMUK $923,955.56 on account of its initial investment in IMUSA, *i.e.,* the joint venture, in the form of inventory and accounts receivable, decreased to reflect the Debtor's entitlement to one-third ($36,511.48) of the net profits of IMUSA from 1996 through 2001, increased by IMUSA expenses paid by IMUK but for which IMUK was not reimbursed ($6,367.56), and further increased by two-thirds of $143,050 that the Debtor drew against his share of the profits ($95,366.67), for a total of $989,955.56. The State Court added to this figure two-thirds of the value of other various impermissible expenses paid by the Debtor from IMUSA's account ($523,695.94).

The Debtor moved to reconsider the calculation of damages and argued that the damages were double-counted when the court gave IMUK a return on its initial investment plus an adjustment for disallowed, unauthorized expenses. In response, the court explained that if a breach of fiduciary duty is deliberate "the beneficiary's recovery is not limited to the loss of the investment", but rather, the "beneficiary is entitled to be made whole" *i.e.,* "is entitled to the

amount by which the trust property increased in value, not merely the amount of the loss of the investment." (Second Decision at 7). In the Second Decision, the court clarified that the compensatory damages award was specifically related to the Debtor's breach of fiduciary duty.

To this Court's knowledge that judgment was not appealed and is final.

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 29, 2010.

### *Procedural History*

On January 20, 2011, the Plaintiff commenced this action under Section 523(a). The Debtor filed a timely answer to the complaint which was essentially a general denial, and which asserted the affirmative defense that the complaint failed to state a cause of action upon which relief could be granted.

On April 11, 2011, the Plaintiff filed a motion for summary judgment and a memorandum of law in support of the motion. The Plaintiff argues that the findings of the State Court in its initial and subsequent decisions are *res judicata* and the doctrine of collateral estoppel should apply to the prior findings of the State Court. As such, the Plaintiff argues, the Judgment debt should be excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6) as a matter of law based upon the State Court findings. The Debtor does not oppose the Motion.

### *Standard of Review for an Unopposed Motion for Summary Judgment*

A motion for summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  In deciding a motion for summary judgment, the

trial court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's

favor." *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.

2004)

   If the non-moving party fails to oppose a motion for summary judgment the court may

"consider the facts undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).  However, the

failure to oppose the motion does not mean that summary judgment should be granted

automatically.  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  An unopposed motion

for summary judgment is not tantamount to a motion for default judgment where the plaintiff

must only prove a *prima facie* case and the court is not necessarily required to draw inferences in

favor of the non-moving party.  *See Vermont Teddy Bear*, 373 F.3d at 242; *Citibank (South*

*Dakota), N.A. v. Spradley (In re Johnson)*, 313 B.R. 119 (Bankr. E.D.N.Y. 2004) ("On a motion

for a default judgment in an adversary proceeding under Section 523(a)(2)(A) of the Bankruptcy

Code, the plaintiff must present a prima facie case from which 'the factfinder could reasonably

find every element that the plaintiff must ultimately prove to prevail in the action.' . . .  The

Court should accept as true 'all of the factual allegations of the complaint, except those relating

to damages,' and draw 'all reasonable inferences from the evidence offered.'") (citations

omitted).

   The standard of review is the same for an opposed or an unopposed motion for summary

judgment.  *See Vermont Teddy Bear*, 373 F.3d at 244.  On an unopposed motion for summary

judgment, the court still is required to make a determination as to whether the movant is entitled

to judgment as a matter of law based on the undisputed facts proven through the evidence presented. *Id*; *DeMartino v. Kruger*, No. 09-CV-305, 2011 WL 1326665, at *3 (E.D.N.Y. March 31, 2011). The court still must draw all reasonable inferences in favor of the non-moving party despite that party's failure to oppose. *See New York District Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, No. 06 Civ. 6377 (WHP), 2009 WL 362640, at *3 (S.D.N.Y. Feb. 13, 2009) (citing *Stichting Ter Behartiging v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005)).

### Res Judicata, Collateral Estoppel and Non-dischargeability

The doctrine of *res judicata*, also known as "claim preclusion," is grounded in the Full Faith and Credit Clause of the United States Constitution. U.S. Const. art. IV, § 1. It prevents a party from re-litigating any issue or defense that was finally decided by a court of competent jurisdiction and which could have been raised or decided in the prior action. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (applying New York preclusion rules); *Swiatkowski v. Citibank*, 745 F.Supp.2d 150, 171 (E.D.N.Y. 2010) (citing *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999)). *Res judicata* applies to judgments that were obtained by default, *see Kelleran v. Andrijevic*, 825 F.2d 692, 694-95 (2d Cir. 1987), but it may not apply if the judgment was obtained by extrinsic fraud or collusion, *see In re Ward*, 423 B.R. 22, 29 (Bankr. E.D.N.Y. 2010). Under the doctrine of *res judicata*, this Court is bound to accept the State Court's determination that the Debtor owes the Plaintiff a debt in the amount of $2,927,697.01 based upon the pre-petition Judgment.

While this Court is prevented from looking behind the findings of fact and conclusions of

law of the State Court in support of the Judgment, the bankruptcy court is the sole authority to determine whether the Plaintiff's claim against the Debtor is non-dischargeable under Section 523(a)(2), (4) or (6) of the Bankruptcy Code.  *See* 11 U.S.C. § 523(c); *Grogan v. Garner*, 498 U.S. 279, 283-84 (1991) ("The validity of a creditor's claim is determined by rules of state law . . . Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946), and *Brown v. Felson*, 442 U.S. 127 (1979)).

In establishing a cause of action under Section 523(a), a creditor may invoke the principles of collateral estoppel, or issue preclusion.  *Grogan v. Garner*, 498 U.S. at 285. Although the doctrine of collateral estoppel clearly is applicable in this case, it must be applied with the utmost caution.  As the consequences to a debtor of finding a debt excepted from discharge are severe, exceptions to discharge are to be narrowly construed and all doubts should be resolved in the debtor's favor.  *See In re Hyman*, 502 F.3d at 66; *see also Bethpage Fed. Credit Union v. Furio (In re Furio)*, 77 F.3d 622, 624 (2d Cir. 1996) (finding that exceptions to discharge should be "narrowly construed against the creditor's objections).

This Court must look to state law to determine whether collateral estoppel should apply in this case.  Under New York law, collateral estoppel prevents parties from relitigating an issue when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted), *cert. denied*, 129 S.Ct. 895 (2009); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

The second prong of this test is easily satisfied in this case. The findings of the State Court were issued after a sixteen-day trial and it is clear from the record that the parties had a full and fair opportunity to litigate the issues presented to the State Court for decision.

It is the first prong of the collateral estoppel test which requires careful analysis, *i.e.*, whether the issues necessarily decided in the State Court action are identical to those presented in the present action. *Grogan v. Garner*, 498 U.S. 279, 282. In giving collateral estoppel effect to a pre-petition judgment in a non-dischargeability action, the bankruptcy court must be able, based upon the findings made in the pre-petition judgment, to make an independent determination that the elements of Section 523(a) have been satisfied. In other words, the bankruptcy court must be able to identify clear and specific findings in the pre-petition judgment which correlate to, and are decisive as to, the elements to be proven in the Section 523(a) cause of action. As this Court has previously stated, it "will not string together sentences...so as to cobble together a finding" under Section 523(a). *Sarasota CCM, Inc. v. Kuncman (In re Kuncman)*, No. 8-10-08306-reg, 2011 WL 1376780, at *6 (Bankr. E.D.N.Y. Apr. 12, 2011).

It is within this framework, that the Court will examine each of the causes of action alleged in the complaint.

### *Section 523(a)(2)(A)*

The Plaintiff seeks to except the full amount of the Judgment debt from discharge under Section 523(a)(2)(A) which allows an exception for "any debt...for money, property...to the extent obtained by false pretenses, a false representation, or actual fraud." False pretenses, false representations and actual fraud are similar terms but all have somewhat different meanings. *See*

*Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  One can satisfy the elements of Section 523(a)(2)(A) by establishing only one of the three types of fraud. *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 260 (Bankr. S.D.N.Y. 2000).

The Plaintiff first claims that the debt was obtained by false pretenses.  A false pretense is defined as "conscious deceptive or misleading conduct calculated to obtain or deprive another of property.  It is the practice of any scam, scheme, subterfuge, artifice, deceit or chicane in the accomplishment of an unlawful objective" on the behalf of the defendant.  *Kovler*, 249 B.R. at 261.  It is "promoted willingly and knowingly by a defendant and is not the result of unintentional conduct or an unintentional misrepresentation."  *Hambley*, 329 B.R. at 396.  It has also been described as "'the product of multiple events, acts, or representations undertaken by the debtor which purposely create a contrived and misleading understanding of a transaction that ... wrongfully induces the creditor to extend credit to the debtor.'"  *In re Dobrayel*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (quoting *Evans v. Dunston (In re Dunston)*, 117 B.R. 632, 641 (Bankr. D. Colo. 1990)).

The elements necessary to establish a debt obtained through false pretenses includes, "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant." *In re Hambley*, 329 B.R. at 396.

The Court finds that the State Court decision is sufficient to support a finding of "false pretenses" under Section 523(a)(2)(A).  The State Court found that an oral joint venture agreement existed among the Debtor, IMUK and IMUSA pursuant to which the Debtor acted as

IMUSA's president.  Implicit in this finding is a representation by the Debtor that he would act on behalf of, and promote the business of, IMUSA as its president.  It was as a result of the Debtor's status as IMUSA's president and the joint venture agreement, that IMUK, the Plaintiff, entrusted the Debtor with the accounts of IMUSA.  The Plaintiff was thus induced to entrust the Debtor with IMUSA's accounts.  Meanwhile, the Debtor had secretly created a competing company and was using IMUSA funds to promote and fund his new business, and pay unauthorized salaries and expenses for his family and himself, all to the detriment of the Plaintiff's financial interests.  The State Court also found that in January 1999 the Debtor had an opportunity, at a meeting with IMUK's principal, to disclose the existence of IMNA and he failed to do so.  The State Court also found that the Debtor used IMUSA and Scala Wisell stationery, rather than IMNA stationery, "with the unmistakable purpose of fooling [IMUK's principal]."  (Decision at 12).  The Debtor's scheme to mislead the Plaintiff satisfies the conditions necessary for false pretenses under Section 523(a)(2)(A).

The Plaintiff also alleges that the Judgment debt should be excepted from discharge because it stems from damages related to the debtor's "false representations."  The elements of a false representation cause of action are: "(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant."  *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009).

> In general, 'a failure to disclose information may be characterized as a misrepresentation,' within the meaning of Code Section 523(a)(2)(A).  *In re Hunt*, 30 B.R. at 439. *See, e.g.*, *In re Self*, 51 B.R. at 690 (debtor's concealment may amount to misrepresentation); *In re Kramer*, 38 B.R. 80, 82 (Bankr. W.D.La.1984) (a misrepresentation "may be implied" by the debtor's conduct or silence); *Matter of Weinstein*, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983) (it is "well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation"); *Matter of Hutchinson*, 27

B.R. 247, 250 (Bankr.E.D.N.Y.1983) (a misrepresentation need not be overt); *Bonosky v. Allen*, 25 B.R. 566, 570 (Bankr.S.D.Ohio 1982) (nondisclosure may constitute misrepresentation); *In re Satterfield*, 25 B.R. at 557; *Matter of Milbank*, 1 B.R. 150, 154 (Bankr.S.D.N.Y.1979) (a "deliberately created falsehood is the same as a spoken falsehood").

*Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 484 (Bankr. S.D.N.Y. 1987).

In this case, an exception to discharge for a debt arising from a false representation is not appropriate. Although, under the caselaw precedent cited above, the State Court decision may be  sufficient to establish a false representation resulting from the Debtor's deliberate failure to disclose IMNA to IMUK, there was no specific finding by the State Court that the alleged false representation was made with the intent to deceive. First, the State Court's finding of a fraudulent *motive* does not necessarily equate with fraudulent *intent*. Second, fraudulent intent was not a necessary element of any of the claims established in the State Court Decision. Finally, the facts described by the State Court Decision do not contain clear and specific finding which would support a finding of fraudulent intent by this Court. Thus, the intent to deceive element of the "false representation" claim cannot be established on summary judgment using collateral estoppel.

Third, the Plaintiff seeks non-dischargeability under Section 523(a)(2)(A) for "actual fraud." The elements for "five finger" fraud under New York state law and for 'actual fraud' under the Code are roughly the same and include: "(1) that the debtor made a false representation; (2) that at the time made, the debtor knew the statement was false; (3) the misrepresentation was made with an intent to deceive; (4) that the creditor reasonably relied on that misrepresentation; and (5) that the creditor was damaged as a result of the misrepresentation." *Citibank (South Dakota), N.A. v. Olwan (In re Olwan)*, 312 B.R. 476, 483

(Bankr. E.D.N.Y. 2004); *compare with Global Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210 (N.Y. App. Div. 2006).

Fraud was not alleged in the State Court action.  Nevertheless, a finding of fraud under Section 523(a)(2)(A) can still be established if the findings by the State Court very clearly and explicitly show all of the elements required to make such a finding.  The Plaintiff argues that a finding of fraud should be held by this Court because the State Court granted punitive damages and found that the Debtor acted with a "fraudulent motive."  However, as previously stated, this Court does not believe that a finding of a "fraudulent motive" is dispositive on the issue of actual fraud under Section 523(a)(2)(A).  The State Court did not enunciate how it reached a finding of "fraudulent motive."  Furthermore, it is unclear whether "fraudulent motive" in the context of a punitive damages award is commensurate to "fraud" under Section 523(a)(2)(A).  This Court is unprepared today to make that leap and finds that actual fraud has not been established by the State Court Decision.

## 11 U.S.C. §523(a)(4)

The Plaintiff also seeks to except the full amount of the Judgment debt from discharge under Section 523(a)(4) which provides an exception to discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  The Plaintiff argues that the findings made by the State Court are sufficient basis upon which this Court can find as a matter of law that the Debtor committed "defalcation while acting in a fiduciary capacity" or that the Debtor's conduct constituted embezzlement under Section 523(a)(4).

*Defalcation while acting in a fiduciary capacity*

For the Court to grant relief under this section relying on the doctrine of collateral estoppel, the State Court findings must establish that (1) the debtor committed defalcation (2) while acting in a fiduciary capacity.  Whether a debtor is acting in a fiduciary capacity, initially, is a matter to be established under federal, not state, law.  *Zohlman v. Zohldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998).  Under federal law, a fiduciary relationship is to be defined narrowly and generally exists as a result of a 'technical' or 'express' trust, and not an equitable trust.  *In re Hayes*, 183 F.3d 162 (2d Cir. 1999);  *Zohlman v. Zohldan*, 226 B.R. at 773.  "The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)." *Id.* at 772.  To determine when a 'technical' or 'express' trust exists, we look to New York law.  *Id.* at 773; *In re Yerushalmi*, 393 B.R. 288, 295 (Bankr. E.D.N.Y. 2008).

In this case, the State Court found that the Debtor entered into an oral joint venture agreement with IMUK, the Plaintiff in this non-dischargeability action, and as such owed IMUK a duty of fidelity and good faith.  The State Court also specifically found that as president of IMUSA, the Debtor owed a fiduciary duty to IMUSA.  Although the State Court did not specifically find that the Debtor owed a fiduciary duty to IMUK as a joint venture partner, it is implicit in the finding that "the Debtor breached his fiduciary duty to IMUSA and IMUK." (Decision at 19).  This Court first must determine whether the State Court's finding that the Debtor owed a fiduciary duty to IMUK under state law is sufficient to satisfy the federal standard, *i.e.*, that the duty "exists as a result of a 'technical' or 'express' trust, and not an equitable trust."  However, in order to apply the federal standard, the Court must look to state

law to determine whether a technical or express trust existed as a result of the joint venture.

The seminal New York Court of Appeals case on the fiduciary duty owed between joint venturers, and upon which the State court relied, is *Meinhard v. Salmon*, 249 N.Y. 458 (1928). In that case, Justice Cardozo found that co-adventurers were subject to fiduciary duties "akin to those of partners" and as trustees are held "to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive. . . ." *Meinhard v. Salmon*, 249 N.Y. at 462. In the *Zohlman v. Zoldan*, the bankruptcy court had the occasion to determine whether partners in a partnership under New York law owe each other a fiduciary duty which arises out of an express or technical trust sufficient to satisfy Section 523(a)(4) fiduciary status. In that case, the court answered in the affirmative. The court found that although New York partnership law does not create an express or technical trust among the partners, but rather a trust *ex malificio* which only springs into existence upon a partner's wrongdoing, the common law of the state of New York goes beyond the statute and does create a trust relationship among partners sufficient to satisfy Section 523(a)(4). *Zohlman v. Zohldan*, 226 B.R. at 774 (citing N.Y. Partnership Law §43). The bankruptcy court found that in New York partners are at all times accountable to one another as trustees or fiduciaries. *Id.*

Based upon the reasoning of *Zohlman v. Zoldan* analyzing the fiduciary duty of partners under Section 523(a)(4), and the reasoning in *Meinhard v. Salmon* which likens joint venturers to partners under New York law, this Court finds that the State Court's finding that the Debtor owed a fiduciary duty to IMUK is sufficient to satisfy the fiduciary standard under Section 523(a)(4).

Once a fiduciary relationship is established, the Court must conclude that the Debtor committed "defalcation" while acting as a fiduciary. The State Court's findings that the Debtor *breached* his fiduciary duties to IMUK did not necessarily include findings which would satisfy the higher standard of *defalcation* under Section 523(a)(4). "Defalcation" is not defined under the Bankruptcy Code. However, the standard for defalcation set forth by the Second Circuit Court of Appeals is high and "requires a showing of conscious misbehavior or extreme recklessness - a showing akin to the showing required for scienter in the securities law context." *Estate of Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007) (finding that this standard "complements but does not dilute the other terms of the provision, "fraud," "embezzlement" and "larceny" - all of which require a showing of actual wrong intent."); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312 (2011) (scienter is "'a mental state embracing intent to deceive, manipulate, or defraud.'"). The defalcation standard requires a "degree of fault 'closer to fraud, without the necessity of meeting a strict specific intent requirement.'" *Hyman*, 502 F.3d at 68 (adopting First Circuit standard set out in *In re Baylis*, 313 F.3d 9, 18-19).

In *Estate of Denton v. Hyman (In re Hyman)*, the Second Circuit affirmed bankruptcy and district court rulings which declined to give collateral estoppel effect to a pre-petition surrogate court's decision in a subsequent Section 523(a)(4) lawsuit. In *Hyman*, the surrogate's court found that the debtor had "breached his fiduciary duty by 'misappropriating and co-opting assets of [] jointly-owned companies for his personal benefit,' [however], the Surrogate's Court made no express findings with regard to [the debtor's] state of mind." *Hyman*, 502 F.3d at 69. These findings were not made by the surrogate's court because "under New York law such findings

were not necessary, since misappropriation and breach of fiduciary duties apparently do not,

under New York law, consistently require proof of culpable mental state." *Hyman*, 502 F.3d at

69.  The Second Circuit found that "[a]lthough the Surrogate's conclusions were undoubtedly

damaging to [the debtor], they were not accompanied by in-depth analysis of a number of issues

relevant to this appeal.  The Surrogate, for example, made no findings concerning [the debtor's]

state of mind." *Id.* at 69.  The surrogate court's decision left the Second Circuit wondering

whether the Debtor breached his fiduciary obligation "by being sloppy or venal or was he

stealing?" *Id.* at 64.  The distinction, it found, was critical to the Section 523(a)(4) cause of

action.

In order to grant summary judgment on the Section 523(a)(4) claim, this Court must look

to the State Court decision to determine whether the Debtor's behavior as found by the State

Court rises to the level of "conscious misbehavior or extreme recklessness."  If this Court has

any doubt as to the Debtor's state of mind in carrying out the actions described by the State

Court, those doubts must be resolved in favor of the Debtor because this is a motion for

summary judgment.

Applying this standard, this Court finds that the findings of the State Court are sufficient

to establish the Debtor's "conscious misbehavior or extreme recklessness," *i.e.,* defalcation

which acting in a fiduciary capacity.  The facts outlined by the State Court clearly and

specifically describe behavior by the Debtor which satisfies the standard of "conscious

misbehavior or extreme recklessness."  The State Court's findings also support the conclusion

that the Debtor's breach of his fiduciary duty was conscious and done with the intent to

"deceive, manipulate or defraud" the Plaintiff.  The strongest evidence of this is found in the

State Court's award of punitive damages in connection with the Debtor's breach of fiduciary duty[1], and the explicit finding by the state court that the award of such damages was based on "the Debtor's deliberate wrongdoing, his fraudulent motive and other outrageous circumstances." (Second Decision at 3-4). This finding is fully supported by the detailed facts outlined by the State Court and recited herein which describe "conscious misbehavior or extreme recklessness" which was intended to deceive manipulate or defraud the Plaintiff.

### Embezzlement

The Plaintiff also argues that the State Court Judgment should be excepted from discharge under Section 523(a)(4) because the Debtor embezzled IMUSA funds. Embezzlement under Section 523(a)(4) has been defined as "the fraudulent appropriation of money by a person to whom such property had been entrusted or into whose hands it has lawfully come." *Gore v. Kressner (In re Kressner)*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993). More precisely, embezzlement consists of three elements: "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent." *In re Guthier*, No. 09-50008, 2010 WL 1443989, at *6 (Bankr. N.D.N.Y. Apr. 9, 2010). Under this standard, embezzlement does not require a fiduciary relationship, but it does require an intent to defraud. *In re Guthier*, 2010 WL 1443989, at *6. Intent to defraud is a higher standard than the "scienter" required

---

[1]    In that part of the State Court's first decision which imposed punitive damages, the court cited caselaw to support the finding that "[p]unitive damages may be awarded in an action for breach of fiduciary duty." (Decision at 28).

under defalcation.  *See In re Hyman*, 502 F.3d at 68 (defalcation does not have a strict specific intent requirement).

In applying this framework to the case at hand, the Court finds that the Plaintiff is not entitled to summary judgment on the Section 523(a)(4) embezzlement claim.  In general, a partner or employee who intentionally diverts or misappropriates the funds of his company may satisfy the element of embezzlement within the meaning of Section 523(a)(4).  *See In re Scheller*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001); *In re Graziano*, 35 B.R. 589 (Bankr. E.D.N.Y. 1983).  By analogy, a joint venture partner could be found to have embezzled funds that were property of the joint venture.  As president of IMUSA, and with the permission of the Plaintiff, the Debtor had the authority to control IMUSA funds, thus fulfilling the first requirement.  The Debtor then "appropriated the property for use other than the use for which the property was entrusted" by using IMUSA funds for his own benefit and the benefit of his family, and to promote IMNA to the detriment of IMUSA.  Thus, the first two elements of embezzlement are satisfied.

However, as previously discussed, the State Court did not make clear findings sufficient to establish the last element of "embezzlement," *i.e.,* actual fraudulent intent.  Although the State Court found that the Debtor engaged in "deliberate wrongdoing," he had a "fraudulent motive," and that the circumstances were "outrageous," the State Court did not make sufficient findings to support a conclusion by this Court that as a matter of law the Debtor's actions were done with the actual intent to defraud the Plaintiff.  The standard on a motion for summary judgment is high and all reasonable inferences must be made in favor of the non-moving party.  Absent a specific and well-supported finding by the State Court of actual fraudulent intent, this Court will

not use collateral estoppel on a motion for summary judgment to find the fraudulent intent

sufficient to satisfy embezzlement under Section 523(a)(4).  To repeat the standard previously

articulated, to apply collateral estoppel in the Section 523 context, this Court must find that the

*identical* issue necessarily was decided in the prior action and is decisive of the present action.

*Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).  Although the State Court found the Debtor's

wrongdoing was deliberate, conscious and "outrageous," it is not sufficiently clear that the

punitive damages award was based on the Debtor's actual fraudulent *intent*.

Therefore, the Plaintiff's motion for summary judgment on embezzlement under Section

523(a)(4) is denied.


### *Section 523(a)(6)*

The Plaintiff further claims that the Judgment debt should be excepted from discharge

under Section 523(a)(6) which provides an exception for any debt arising from "willful and

malicious injury by the debtor to another entity or the property of another debtor."  11 U.S.C. §

523(a)(6).  In 1998, the Supreme Court in *Kawaauhau v. Geiger*, concluded that  "willful" within

the meaning of Section 523(a)(6) requires a "deliberate or intentional *injury*, not merely a

deliberate or intentional *act* that leads to injury. . . ."  This standard is akin to an intentional tort

which requires that the actor "intend 'the *consequences* of an act,' not simply 'the act itself.'"

*Kawaauhau v. Geiger*, 523 U.S. 57, 62-63 (1998); *see also Ball v. A.O. Smith Corp.*, 451 F.3d

66, 69 (2d Cir. 2006).  Actions which are negligent or reckless, do not satisfy the Section

523(a)(6) "willful" standard.

This Court finds that the State Court findings are sufficient to satisfy the "willfulness" aspect of Section 523(a)(6). The State Court found that the Debtor committed a "deliberate wrongdoing" (Second Decision at 3) and he "knowingly and intentionally. . . [misled] and deceive[d] suppliers and customers into believing that they were still dealing with IMUSA" (Decision at 25) and also intentionally breached his contract with the Plaintiffs. The Debtor's intentional deception and breach of contract resulted in a loss to the Plaintiff. A natural result of the Debtor's conduct was an injury to the Plaintiff, which resulted in a judgment in the Plaintiff's favor. According, this Court believes that the Debtor's behavior satisfies the standard for "willful" under Section 523(a)(6).

Section 523(a)(6) also requires that the Debtor's willful actions be "malicious." In the Second Circuit, "malice" under Section 523(a)(6) means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006). Malice need not be *actual*, but "may be constructive or implied. . . . 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *In re Stelluti*, 94 F.3d at 88 (quoting *In re Stanley*, 66 F.3d at 668); *see also Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 130-31 (Bankr. E.D.N.Y. 2007) (malice "may be implied by 'the acts and conduct of the debtor in the context of [the] surrounding circumstances'" and "when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'"). The standard can be summarized as follows:

> [T]he statutory element of maliciousness will be found by imputation where the
> debtor has breached a duty to the plaintiff founded in contract, statute or tort law,

willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and, most important, and under some aggravating circumstance such as to warrant denial of discharge. In the absence of a finding of 'Biblical malice,' an ordinary tort or breach of contractual or statutory duty generally is not sufficient to deny discharge under subsection (6) without some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the "fresh start" to which the "honest but unfortunate" debtor would normally be entitled under the Bankruptcy Code.

*Bundy American Corp. v. Blankfort (In re Blankfort),* 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998).

When applying collateral estoppel to a Section 523(a)(6) determination, the non-bankruptcy court need not have made a finding of malice *per se*. Rather the bankruptcy court can infer from the prior factual findings whether a debtor's pre-bankruptcy conduct was "malicious" sufficient to satisfy Section 523(a)(6). *See Ball v. A.O. Smith Corp.*, 451 F.3d at 70 (although the pre-bankruptcy decision did not use the terms "malicious" or "malice", the decision required "findings that are the equivalent of findings of malice.").

In this case, the Debtor exhibited "malice" under the standard applied within this Circuit. While the Debtor did not exhibit actual malice, his behavior implies malice given the circumstances. The Debtor intentionally took advantage of his position as president of IMUSA by misusing funds and assets of the company to his own personal advantage. The Debtor knew or should have known that he was failing to uphold his duties and president and joint venturer in IMUSA and that his behavior would be injurious to the Plaintiff. In addition, the State Court's award of punitive damages supports a finding that the Debtor's behavior constitutes "willful and malicious" behavior under Section 523(a)(6). Under New York law, punitive damages may be awarded if any of the following has been established, "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that

willfully and wantonly disregards the rights of another." *Don Buchwald & Assoc. v. Rich*, 723

N.Y.S.2d 8 (N.Y. App. Div. 2001); *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33 (N.Y. App.

Div. 1996). Other New York courts have found that punitive damages may awarded if a

defendant's behavior constituted a "conscious disregard of the rights of others or for conduct so

reckless as to amount to such disregard." *Randi A.J. v. Long Island Surgi-Center*, 842 N.Y.S.2d

558 (N.Y. App. Div. 2007) (*citing Hartford Acc. & Indem. Co. v. Village of Hempstead*, 48

N.Y.2d 218, 227 (1979)).

The requirements for punitive damages necessitate the same type of conduct required for

a finding of "willful and malicious conduct" required by Section 523(a)(6). Both require

intentional and deliberate wrongdoing conducted in a reckless manner, and a disregard of the

effect that conduct will have on others. The State Court opinion found that punitive damages

were appropriate in this case because of the Debtor's "outrageous" and "flagrant" behavior.

Because of the State Court's award of punitive damages, together with the findings of the

State Court identifying the Debtor's deliberate and intentional misbehavior, this Court finds that

the requirements of Section 523(a)(6) have been satisfied and litigated by the State Court.

Therefore, it is appropriate to allow an exception to discharge under Section 523(a)(6).


### *Conclusion*

For the reasons stated herein, the Court finds that the Plaintiff is entitled to judgment as a

matter of law that the full amount of the Judgment debt should be excepted from discharge for

false pretenses under Section 523(a)(2)(A), defalcation while acting in a fiduciary capacity under

Section 523(a)(4), and willful and malicious conduct under Section 523(a)(6). *See Cohen v. de*

*la Cruz*, 523 U.S. 213 (1998) (all liability arising from debtor's conduct is non-dischargeabile, not just the money actually "obtained by" the debtor).

The Court declines to grant judgment as a matter of law under any provision of Section 523(a) which requires a showing of actual fraudulent intent.

A Judgment consistent with this Memorandum Decision will issue forthwith.

Dated: Central Islip, New York
      August 16, 2011              **/s/ ROBERT E. GROSSMAN**
                                         Robert E. Grossman
                                         United States Bankruptcy Judge